# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **THOMAS R. DHEN**, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06CV00057 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **EATON CORPORATION, ET AL.,** ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendants. ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Jeffrey D. Zimon, Benesch, Friedlander, Coplan & Aronoff LLP, Cleveland, Ohio, and Maureen R. Knight, Constangy, Brooks & Smith LLC, Fairfax, Virginia, for Defendants.*

The plaintiff brings this case under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001-1461 (West 1999 & Supp. 2006) ("ERISA"), challenging the defendants' denial of long term disability benefits. The parties have filed cross motions for summary judgment. Since I find that the defendants' decision to deny the plaintiff benefits was not an abuse of discretion, the defendants' motion will be granted and the plaintiff's motion will be denied.

I

In this action the plaintiff, Thomas R. Dhen, seeks review of a decision of the defendants Eaton Corporation ("Eaton") and Broadspire Services, Inc. ("Broadspire"), denying him long term disability ("LTD") benefits under the provisions of the Eaton Corporation Long Term Disability Plan for U.S. Employees (the "Plan"). The defendants have filed the administrative record of Dhen's claim and based on that record, the parties have moved for summary judgment in their respective favor. The issues have been briefed and the case is ripe for decision.[1]

The facts of this case, as disclosed by the administrative record, are as follows. The plaintiff began working for Eaton as a machinist on April 29, 1985. Eaton, the Plan administrator, provides the Plan to its employees, while Broadspire serves as the claims administrator for the Plan. The Plan has a two-tiered definition of a covered disability:

> 1. During the first 24 months of such disability, inclusive of any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company; and

---

[1] No party has requested oral argument and I find that the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

> 2. During the continuation of such total disability following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fitted by reason of education, training, or experience–at Eaton Corporation or elsewhere.

(R. at 729.)

The plaintiff is a sixty-year-old man with a history of lower back and leg pain dating back to 1996. On March 24, 1997, the plaintiff underwent a microdiscectomy operation performed by Michael A. King, M.D. Because of a staph infection he developed following the operation, the plaintiff needed to undergo two additional surgeries. Following the surgeries, the plaintiff was an inpatient at Mediplex Rehab between May 9, 1997 and June 7, 1997, for continued wound care and rehabilitation.

Pursuant to Dr. King's orders, the plaintiff did not return to work until September 1997, and even then only at a part time, light duty status. By the end of September 1997, the plaintiff had worked up to a full time, light duty status. However, in November 1997, the plaintiff aggravated his back while at work.

The plaintiff was re-examined by Dr. King on December 3, 1997. Dr. King advised the plaintiff to stop working until he underwent four weeks of physical therapy. The plaintiff's last day of work was December 12, 1997, at which time he filed an application for benefits under the Plan. His application was accepted, and he

-3-

Case 1:06-cv-00057-JPJ-PMS   Document 18   Filed 10/22/06   Page 3 of 11   Pageid#: 115

began to receive benefits under the first tier of the covered disability definition effective December 13, 1997. On or about June 11, 1998, the plaintiff qualified for LTD benefits pursuant to the second tier.

As stated in the Plan, the claims administrator has the right to require the plaintiff to undergo an independent medical examination and functional capacity test from time to time. (R. at 734.) In 2000 and again in 2002, the plaintiff was sent for an independent medical evaluation and a functional capacity test. Both times, the plaintiff's LTD benefits were continued after the testing.

However, after reviewing the plaintiff's case in 2004, Broadspire decided to terminate the plaintiff's LTD benefits. The 2004 review process appears to have been initiated by a letter dated February 4, 2004. In this letter, Isabel Venkatesan, a Broadspire claim specialist, informed the plaintiff and the plaintiff's physicians that Broadspire needed to update his information and requested that the plaintiff fill out a resource questionnaire. (R. at 31.)

As part of a continuing review of the plaintiff's disability claim, Venkatesan also requested that Ira Posner, M.D., and Wendy Weinstein, M.D., conduct peer reviews of the plaintiff's file. In his peer review report dated April 9, 2004, Dr. Posner, an orthopedic surgeon, opined, "the physical examination does not show an impairment that would preclude work at the sedentary level on a sustained basis." (R.

at 251.) Dr. Weinstein, an internal medicine specialist, similarly stated, "the provided records fail to support a functional impairment that would preclude the claimant from performing the job duties of any occupation." (R. at 253.) In forming her opinion, Dr. Weinstein appears to have relied, in part, on the plaintiff's own admissions in the resource questionnaire. (*Id*.) After outlining some of the activities the plaintiff claims he performs on a regular basis such as cooking, shopping, doing the dishes, mowing the lawn, car maintenance, and attending school, Dr. Weinstein concludes that "based on the claimant's level of activity, the records clearly document that he is not totally disabled from any occupation." (*Id*.)

Broadspire also required that the plaintiff undergo another functional capacity evaluation. This evaluation took place June 9-10, 2004, at Appalachian Rehabilitation and Sports Medicine and was conducted by Marvin G. Payne, a physical therapist. (R. at 320-334.) In his report, Payne opined that the plaintiff was capable of returning to work. (R. at 321.)

The review process of the plaintiff's claim also included an employability assessment and a labor market survey. (R. at 348-367.) These reports were completed by a vocational consultant on September 27, 2004, and September 30, 2004, respectively, and stated that there were jobs available near the plaintiff's home that he was capable of performing. (*Id*.)

Consequently, by a letter dated October 26, 2004, Broadspire informed the plaintiff that his LTD benefits would be terminated effective December 1, 2004. As this letter stated, "the provided records fail to support a functional impairment that would preclude you from performing the job duties of any occupation." (R. at 547.)

By a letter dated April 11, 2005, the plaintiff appealed Broadspire's decision. (R. at 550.) To support his appeal, the plaintiff submitted new medical and vocational reports/records including an independent vocational evaluation,[2] a more recent MRI, medical records from Southeastern Pain Management, and an office note from Douglas A. Pote, M.D.

As part of the appeal process, Broadspire requested that Martin G. Mendelssohn, M.D., perform a peer review of the plaintiff's file, which now included the medical documentation submitted by the plaintiff on appeal and the original claim file. In his peer review report, Dr. Mendelssohn noted that he agreed with Broadspire's decision to terminate the plaintiff's benefits. (R. at 593.) Consequently, by a letter dated July 7, 2005, Gina Selwitz, a Broadspire appeal coordinator, informed the plaintiff that his appeal had been denied. (R. at 597.) As indicated in

---

[2] This vocational evaluation was conducted by Norman E. Hankins, Ed.D., on May 18, 2005, at the request of the plaintiff. In his report dated May 20, 2005, Hankins opined that the plaintiff clearly met the Plan's definition of total disability. (R. at 561-570.)

-6-

this letter, the plaintiff had one hundred and eighty days to file a final level appeal in which his case would be reviewed by the Plan administrator.

The plaintiff filed a final level appeal on December 30, 2005. In his notice of appeal, the plaintiff provided new medical records from Southeastern Pain Management and a report from William E. Kennedy, M.D., dated October 11, 2005. Dr. Kennedy, an orthopedic surgeon, opined that the plaintiff was permanently and totally disabled from engaging in gainful employment. (R. at 618.) In his report, Dr. Kennedy states that his opinion takes into account the plaintiff's work restrictions, the plaintiff's endurance, and the likely side effects from the plaintiff's pain medications. (*Id.*)

As part of the final level appeal process, Broadspire requested two more peer reviews from Michael Goldman, M.D., and Tamara Bowman, M.D. Dr. Goldman, a specialist in physical medicine and rehabilitation, agreed with previous peer reviewers that the extensive medical records did not support a functional impairment from any occupation effective December 1, 2004. In particular, Dr. Goldman noted that "[the plaintiff] has had three Functional Capacity Evaluations, all of which have indicated capability of returning to light to medium work activities." (R. at. 623.) Dr. Bowman, who specializes in internal medicine and endocrinology, opined that from an internal medicine standpoint, "there are insufficient objective clinical findings

-7-

Case 1:06-cv-00057-JPJ-PMS   Document 18   Filed 10/22/06   Page 7 of 11   Pageid#: 119

documented to support a level of functional impairment that would render the claimant unable to perform any occupation from 12/1/2004 onward." (R. at 630.)[3]

Furthermore, in the final appeal review process, Eaton also forwarded the plaintiff's entire file dating back to 1997, to Medical Review Institute of America, a company that provides external review services. An orthopedic surgeon working for this third-party company reviewed the entire record and stated in a report dated March 9, 2006, "the record as submitted clearly indicates the patient has been stable and capable of functioning at a medium physical demand level. This is supported by no less than three FCE's [functional capacity evaluations]." (R. at 25.)

Consequently, by a letter dated April 6, 2006, Eaton informed the plaintiff of its decision to uphold the claim administrator's denial of LTD benefits. In response, the plaintiff filed the present case.

II

The standard of review in a case brought under ERISA challenging the denial of benefits is de novo unless the benefit plan gives the administrator or fiduciary

---

[3] Dr. Bowman also criticized Dr. Kennedy's report, noting that "there is no documentation of side effects in the claimant due to his medications, and therefore no evidence that the claimant's medications are impacting his ability to work." (*Id*.)

discretionary authority to either determine eligibility for benefits or construe the terms of the plan. *Firestone Tire & Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989). Thus, as the Fourth Circuit has held, the court must first determine de novo whether the benefit plan confers discretionary authority on the administrators. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d. 518, 522 (4th Cir. 2000). ("[W]e examine the terms of the plan to determine if it vests in its administrators discretion...We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority."). If the court finds that the plan does confer discretionary authority on its administrators, the court must then decide de novo whether the administrators acted within the scope of their vested discretion. *Id.* If the court finds that the administrators have discretionary authority and acted within the scope of this discretion, the court then reviews the denial of benefits under an abuse of discretion standard. *Ellis v. Metro. Life Ins. Co.*, 126 F.3d. 228, 232 (4th Cir. 1997).

The deferential abuse of discretion standard requires that the court not disturb an administrator's decision as long as it is reasonable, even if the court would have reached a different conclusion. *Doe v. Group Hospitalization & Med. Servs.*, 3 F. 3d. 80, 85 (4th Cir. 1993); *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 85 (4th Cir. 1996); *Ellis*, 126 F.3d at 232. Under this standard, an administrator's decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is

supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)).

The denial of LTD benefits here should be reviewed under an abuse of discretion standard, as the Plan explicitly confers discretionary authority on the Plan administrator (Eaton) or claims administrator (Broadspire). As the Plan states, "the Plan Administrator and/or Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including, but not limited to, any disputed or doubtful term." (R. at 744.)

After reviewing the summary judgment record, I find that the defendants did not abuse their discretion in denying LTD benefits to the plaintiff under the Plan. The initial decision to terminate the plaintiff's benefits was the result of a lengthy process in which extensive medical records were examined by Broadspire and two peer reviewers. Additionally, in reaching the initial decision, Broadspire also relied on a recently conducted functional capacities evaluation, an employability assessment report, and a labor market survey among other documents.

Furthermore, the appeal process was a lengthy and thorough endeavor in which the defendants relied on the plaintiff's new evidence, numerous medical and vocational records, three additional peer reviews, and the report of a third-party orthopedic surgeon who reviewed the plaintiff's entire file dating back to 1997. In

short, the final decision to deny the plaintiff LTD benefits was the result of a deliberate and principled reasoning process. Additionally, substantial evidence supported the defendants' conclusion that the plaintiff did not satisfy the definition of covered disability under the Plan. As the defendants' decision was not an abuse of discretion, the defendants are entitled to summary judgment.

III

For the reasons stated, the plaintiff's motion for summary judgment will be denied and the defendants' motion for summary judgment will be granted. A separate final judgement will be entered.

DATED: October 22, 2006

/s/ JAMES P. JONES
Chief United States District Judge